United States District Court
Southern District of Texas
**ENTERED**
December 31, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MITCHELL CURRY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-306 |
| | § | |
| M-I, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

This case, filed on March 16, 2017, concerns whether Plaintiffs were improperly denied overtime compensation under the Fair Labor Standards Act ("FLSA").[1] Pending is Defendant M-I, LLC's ("Defendant" or "M-I") Motion to Dismiss and four Motions for Summary Judgment. (D.E. 157, D.E. 158, D.E. 159, D.E. 161and D.E. 164).[2] For the following reasons, the undersigned recommends Defendant's Motion to Dismiss (D.E. 157) and Motions for Summary Judgment (D.E. 158, D.E. 159 and D.E. 164) be

---

[1]This case was initially conditionally certified on January 24, 2018. (D.E. 48). However, the parties later jointly requested a change to the class definition and, asserting there were two defendants, a motion to sever. (D.E. 77 and D.E. 79). These motions were granted on September 25, 2018 and October 10, 2018 and this case was severed and filed with M-I, LLC as the defendant. (D.E. 80 and D.E. 84).

[2]Defendant has filed four lengthy motions for summary judgment in this case. (D.E. 158, D.E. 159, D.E. 161, and D.E. 164). Defendant has also filed a Motion to Dismiss. (D.E. 157). In addition to the provisions of Local Rule 7, the Court ordered that "[p]age limits may not be circumvented by filing multiple separate motions seeking the same or similar relief." (D.E. 98, Page 3). Counsel for Defendant is cautioned that multiple dispositive motions filed to circumvent this Court's page limit may not be considered by the District Judge in this case and/or in future cases if leave is not first obtained.

**GRANTED** and  Defendant's Motion for Partial Summary Judgment be **DENIED** (D.E. 161).[3]

## I.      JURISDICTION

The Court has federal question jurisdiction over this FLSA action pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned United States Magistrate Judge for case management pursuant to 28 U.S.C. § 636.  (D.E. 70).

## II.     BACKGROUND

Defendant is an oilfield service company providing engineering drilling fluid systems and additives to oil exploration and production companies.  Using at least two third-party staffing entities, Defendant utilized certain workers classifying them as independent contractors rather than employees.  Plaintiffs allege Defendant improperly classified these workers as independent contractors, paying them a day rate with no overtime compensation in violation of the FLSA because they regularly worked in excess of 40 hours per week.  Plaintiffs brought this action on behalf of themselves and all other similarly situated employees as a class certified in October 2018.

Notice and consent forms were mailed to potential class members and the class currently consists of approximately 21 workers, including one Solids Control Operator ("SCO") and 20 Drilling Fluids Specialists ("DFS").  Plaintiffs filed a Motion for Partial Summary Judgment on July 3, 2019, challenging certain defenses.  (D.E. 124).   On August 30, 2019, Defendant filed a Motion to Dismiss and four Motions for Summary

---

[3]Also pending is Plaintiffs' Motion for Partial Summary Judgment.   (D.E. 124).   The undersigned will enter a separate M & R reviewing this motion at a later date.

Judgment.  (D.E. 157, D.E. 158, D.E. 159, D.E. 161and D.E. 164).  The undersigned has also reviewed the parties' responses and replies.  Additionally, in a separate M & R, the undersigned has recommended the class remain certified. (D.E. 195).

## III.   MOTION TO DISMISS (D.E. 157)

Defendant first seeks the dismissal of certain opt-in Plaintiffs who failed to respond to discovery requests and/or failed to make themselves available for a deposition. (D.E. 157).  Specifically, Defendant asserts Plaintiffs Jonathan Linder and Jacob Smith should be dismissed from this action with prejudice.  In their response, Plaintiffs agree to the dismissal of these two Plaintiffs and have filed a "notice of withdrawal of consent." (D.E. 173 and D.E. 182).  Having reviewed the Motion, the undersigned recommends Defendant's Motion to Dismiss be **GRANTED** and Plaintiffs Jonathan Linder and Jacob Smith be dismissed from this action.

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and

drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)(refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for

trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

## V.   SUMMARY JUDGMENT MOTIONS

### A.   Defendant's Motion for Summary Judgment as to Robert Boles, Clyde Brunson, Juan Andy Garcia, Andrew Gillikin and Robert Joiner (D.E. 158)

Defendant asserts summary dismissal of these five Plaintiffs' claims is appropriate because they either did not work for Defendant during the relevant time period or were not covered in the class definition. (D.E. 158). In their response, Plaintiffs agree to the dismissal of three: Robert Boles, Clyde Brunson and Juan Andy Garcia. (D.E. 175 and D.E. 176).[4] Plaintiffs further assert, without citing any evidence in support other than an opt-in consent form, that Robert Joiner is not an opt-in Plaintiff in this case and is instead

---

[4]Docket Entry 177, while labeled as a response to this motion, was incorrectly filed. It is a response to one of Defendant's other pending summary judgment motions and was filed twice. (D.E. 177 and D.E. 178).

an opt-in Plaintiff in the related case. (D.E. 175, Page 2); (Case No. 2:17-cv-102). Therefore, Plaintiffs assert his dismissal is unnecessary.   However, the parties agree Joiner should not be a party in this action.

As to the one remaining Plaintiff, Plaintiffs assert Andrew Gillikin falls within the class definition, having worked as a DFS up to the end of January 2016, within the stipulated period from June 14, 2015 to the present. (D.E. 175 and D.E. 176).  Defendant does not dispute that Gillikin provided services to it.   (D.E. 185, Page 2).   Rather, Defendant asserts Gillikin was not hired through any of the covered staffing agencies contained in the class definition during the relevant time period and was instead hired by a staffing agency called "Mud Check." (D.E. 185).[5]   While Plaintiffs allege Gillikin worked for Defendant through "MudTech," a purported former subsidiary of an included staffing agency, New Tech Global Ventures, LLC ("New Tech"), the personnel documents provided by Plaintiff list Gillikin's hiring agency as "Mud Check."  (D.E. 175, Page 4 and D.E. 176, Pages 2 and 13).   No evidence has been provided that "Mud Check" is in anyway related to the covered staffing agencies in this proceeding.   While Gillikin's consent form lists MudTech/MISWACO, no evidence has been provided in support that he was hired by "MudTech" rather than "Mud Check." (D.E. 175-3, Page 2). Further, in November 2018, Plaintiffs issued a subpoena to New Tech seeking the records for any person who might meet the class definition in this case and Gillikin's name does

---

[5]The included staffing agencies/third party vendors are:  Elwood Staffing Services, Inc.; WTS Energy, LLC; Field Personnel Resources; and New Tech Global Ventures, LLC.  (D.E. 77, Pages 2-3 and D.E. 84).

not appear in any of the documents produced.  (D.E. 185-3 and D.E. 186).  Additionally,

it does not appear Plaintiffs' counsel issued subpoenas to either MudTech or Mud Check.

Therefore, for the reasons stated above, the undersigned recommends Defendant's

Motion for Summary Judgment be **GRANTED** (D.E. 158) and Defendants Robert Boles,

Clyde Brunson, Juan Andy Garcia, Andrew Gillikin and Robert Joiner be **DISMISSED**

from this case.

### B.     Defendant's Motion for Summary Judgment as to Craig Adels (D.E. 159)

Defendant asserts Plaintiff Craig Adels, a DFS, is not entitled to overtime pay

because he was appropriately classified as an independent contractor or, alternatively, he

was an exempt employee pursuant to both the FLSA's administrative and highly

compensated employee exemptions.  Adels counters that there is a question of material

fact as to whether he was appropriately classified as well as whether any exemptions

apply.  (D.E. 179).

The FLSA requires employers to provide overtime compensation for its employees

"for a workweek longer than forty hours."  29 U.S.C. § 207(a)(1).  In contrast,

independent contractors are not entitled to overtime under the FLSA.  *Id*. (including only

"employees").  Additionally, employers do not have to pay overtime to individuals

"employed in a bona fide executive, administrative, or professional capacity" or to

"highly compensated employees."  29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.601.

"If an employer violates the overtime-compensation requirement, it is 'liable to the

employee or employees affected in the amount of their unpaid minimum wages, or their

unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (quoting 29 U.S.C. § 216(b)).   In order to establish an overtime claim under the FLSA, Plaintiffs must establish four elements:   "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) and the amount of overtime compensation due." *Id*. (quoting *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014)).   Once the employee establishes this *prima facie* case, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id*.   "If the employer claims 'that the suing employee is exempt from the overtime requirement,' then the employer 'has the burden of proving that the employee falls within the claimed exempted category.'" *Johnson*, 758 F.3d at 630 (citation omitted).   As recently clarified by the Supreme Court, "courts are to give FLSA exemptions 'a fair reading,' as opposed to the narrow interpretation previously espoused by [the Fifth Circuit] and other circuits." *Carley v. Crest Pumping Tech., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018) (citing *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018)).

### 1.    Economic Realities Standard

Whether a worker is an employee under the FLSA is a question of law and is "very fact dependent." *Parrish*, 917 F.3d at 377, 379 (citation omitted).   Courts in the

Fifth Circuit rely on five, non-exhaustive factors provided in *United States v. Silk*, 331 U.S. 704 (1947), to assist in making this determination: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relevant investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id*. at 379 (quoting *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (citation omitted)). "Essentially, [the Court's] task is to determine whether the individual is, as a matter of economic reality, in business for himself." *Id*. at 379 (citation omitted). "No single factor is determinative" and the focus is whether the putative employees are economically dependent. *Id*. at 380 (citations omitted).[6]

### a.   Degree of Control

"Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that [the individual] stands as a separate economic entity." *Parrish*, 917 F.3d at 381 (citations omitted). A "lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence."

---

[6]The basic facts in *Parrish* are similar to those in this case. The Fifth Circuit, analyzing each of the *Silk* factors at the summary judgment stage, concluded the plaintiffs, who were directional drillers hired through staffing agencies as independent contractors, who performed essentially the same job duties as directional drillers who were employees, and who were paid a day rate were appropriately classified as independent contractors. *Parrish*, 917 F.3d at 376, 379-88. Therefore, the Fifth Circuit rendered judgment in Defendant's favor. *Id*. at 388. While similar, "*Parrish* was a fact-specific decision limited to the circumstances of that case." *Hiser v. NZone Guidance, LLC*, No. 1:18-cv-1056-RP, 2019 WL 2098111, at *3 (W.D. Tex. April 24, 2019). However, the undersigned does reference the Fifth Circuit's reasoning in *Parrish* throughout this M & R given the similarity with this case.

*Chapman v. A.S.U.I. Healthcare of Texas, Inc.*, No. H-11-3025, 2012 WL 3614187, at *
4 (S.D. Tex. Aug. 21, 2012) (citing *Hopkins*, 545 F.3d at 343).

In *Parrish*, the Fifth Circuit found this factor weighed in favor of independent
contractor status because Defendant "did not dictate how plaintiffs (directional drillers)
completed the directional-drilling calculations," the plaintiffs were in charge of making
the provided well plan work and they met with and provided reports to clients. *Parrish*,
917 F.3d at 381-82. Further, while working assigned shifts, the plaintiffs "did not have to
accept projects" and were able to turn them down "without negative repercussion." *Id.*
Additionally, given the nature of their position, it was reasonable for the defendant to
"know which [Plaintiffs] were working at any given time" and "to know when [they]
would be on-site." *Id.* Further, "[r]equiring plaintiffs to undergo safety training and drug
testing, when working at an *oil-drilling site*, is not the type of control that counsels in
favor of employee status." *Id.*

This case involves a similar analysis. Adels' primary duty as a DFS, often called a
mud engineer, was to collect and test the mud mixture used at rig sites to facilitate
drilling and to then generate a mud report with his findings and make recommendations
to Defendant's clients based on the results. (D.E. 159-2, Pages 29-36 and 38). As a mud
engineer, Adels testified his job was to "formulate the mud in a way that best allows the
rig to drill as fast and as safe as possible." (D.E. 159-2, Page 46). He further testified he
worked independently on site and had seen his two direct supervisors collectively less
than eight times over the course of almost two years. (D.E. 159-2, Pages 38-39). Ben
Fullmer, Defendant's corporate representative, testified that DFSs would be required to

undergo safety training, to follow Defendant's policies and procedures and were ultimately under the supervision of one of Defendant's Field Service Managers who were "roaming supervisor[s]" who would "go rig to rig and just make sure everything has—everyone has what they need or if they need any technical advice." (D.E. 179-1, Pages 9, 29, 33, and 39). Adels also stated he also attended safety meetings, supervised others, observed equipment, conducted inventory and handled logistics. (D.E. 159-2, Pages 36-38). Additionally, he testified he was able to coordinate his own schedule, to turn down projects although he rarely did because he would not make money sitting at home and he also made independent decisions and recommendations when conducting mud tests. (D.E. 159-2, Pages 18 and 33-34). Fullmer also testified DFSs designated as independent contractors were able to turn down positions based on availability whereas employees had set schedules they were expected to work as scheduled. (D.E. 179-1, Pages 35-36). While he also testified that if an independent contractor DFS turned down a job, the available remedy would be to "most likely" terminate that contract, there is no indication this occurred or applied to Adels during his contracts with Defendant. (D.E. 179-1, Page 36). As stated directly above, Adels specifically testified he was able to turn down work offered by Defendant.

Therefore, using the Fifth Circuit's reasoning in *Parrish*, the undersigned concludes this factor clearly weighs in favor of independent contractor status.

### b.    Relevant Investments

In applying the relative-investment factor, courts compare a worker's individual investment to that of the alleged employer. *Hopkins*, 545 F.3d at 344 (citation omitted).

Defendant cites to no evidence in support of this factor, instead citing to the decision in *Parrish* where the Fifth Circuit afforded this factor little weight "in light of the nature of the industry and type of work involved." *Parrish*, 917 F.3d at 383. The Fifth Circuit in found the defendant had "[o]bviously…invested more money at a drill site compared to each plaintiff's investments," ultimately concluding "this factor merits little weight in light of the other summary-judgment-record evidence supporting IC-status." *Id.* Accordingly, while this factor clearly weighs in favor of employee status, the undersigned recommends this factor should also be given little weight in this case in light of the Fifth Circuit's ruling in *Parrish* as it is the same industry and similar work involved.

### c.  Degree of Profit and Loss

The undersigned next considers "the degree to which the worker's opportunity for profit or loss is determined by the alleged employer." *Hopkins*, 545 F.3d at 343. Defendant asserts this factor weighs in favor of independent contractor status because Adels had the option to decline work but rarely did so because he would not be paid if he was not working.  (D.E. 159-2, Pages 18-19).  Defendant further argues Adels could control his own costs because he had the option to secure his own insurance and used his own truck and cellular phone to conduct business.  (D.E. 159-2, Pages 11 and 25-27). Adels counters that he had no opportunity to increase his pay by adjusting his costs and the only way to earn more was to work a higher volume of days when allowed by the Defendant.  (D.E. 179, Page 13).  Adels further argues he could not subcontract his work

at M-I and was required to work the same hours and be on call like Defendant's employees.  (D.E. 179-1, Page 42).

In Parrish, the Fifth Circuit found the plaintiffs did have sufficient control over their profits and losses to have this factor support independent contractor status.  Parrish, 917 F.3d at 384.  Specifically, while the defendant "had a set pay schedule for ICs based on their experience, plaintiffs made decisions affecting their expenses" and "they did not receive any pay from [Defendant] when they were not working on one of its projects," unlike defendant's employees.  Id.  The Fifth Circuit further found that the plaintiffs' inability to subcontract was not dispositive as it was "not unreasonable for a company to want to hire a specific person…especially the situation when the IC is being hired for his advanced skill and specialized experience." Id. at 385.

Here, Adels, working through his LLC, Adels Consulting,[7] received a daily rate for pay and was reimbursed mileage and paid a per diem.  (D.E. 159-2, Pages 4, 13-14 and 21-22 and D.E. 159-6).  He was not paid for days he chose not to work. (D.E. 159-2, Pages 18-19).  He also made decisions regarding the cost of his required insurance, transportation and cellular service.  (D.E. 159-2, Pages 11 and 25-27).  Additionally, it was not unreasonable for Defendant to specifically hire Adels, with his substantial experience, and not allow him to subcontract the work.  Parrish, 917 F.3d at 384-85.

---

[7]Adels and his wife are the sole owners of Adels Consulting, LLC, which was formed in Wyoming in either 2004 or 2005.  (D.E. 159-2, Page 6 and D.E. 179-2, Pages 9-10).  Adels Consulting has never employed any employees but has instead had two contract DFSs, namely Adels and his son, Nathan Adels.  (D.E. 159-2, Page 6 and D.E. 179-2, Pages 9-10).  Nathan Adels did not provide any services to Defendant.  (D.E. 179-2, Pages 9-10).

Therefore, the undersigned recommends this factor weighs in favor of independent contractor status.

      **d.**      **Skill and Initiative Required to Perform Job**

The undersigned next considers whether Adels exhibits the type of unique skill and/or initiative typically indicative of independent contractor status. *Hopkins*, 545 F.3d at 345; *Parrish*, 917 F.3d at 385. As previously discussed, Adels is a highly skilled individual, having worked for over 35 years as a DFS, who performed his job duties as the only DFS on site with little to no supervision using a large amount of discretion. (D.E. 159-2, Pages 5-7 and 23-24); *Parrish*, 917 F.3d at 386. Adels asserts the focus of this factor is not whether he was a highly skilled individual but rather whether he, classified as an independent contractor, possessed any unique skill or initiative different from an employee DFS. (D.E. 179, Pages 15-16); *Karna v. BP Corp. N. America, Inc.*, Case No. H-12-0101, 2013 WL 1155485, at *11-12 (S.D. Tex. Mar. 19, 2013) (opinion vacated in part on other grounds). However, the Fifth Circuit has since "decline[d] to require plaintiffs, as putative ICs, [to] be more skilled than their employee counterparts," finding the plaintiffs' "high-skill level, understood in light of their complicated work, weighs heavily in favor of IC status." *Parrish*, 917 F.3d at 386. The same is true here. Therefore, the undersigned recommends this factor also weighs in favor of independent contractor status.

      **e.**      **Permanency of the Relationship**

The last factor to consider is the permanency of the relationship between the worker and the alleged employer. *Chapman*, 2012 WL 3614187, at * 6 (citation

omitted).   The Court should consider whether the plaintiff "worked exclusively" for the defendant, the total length of the relationship between the parties depending on the surrounding circumstances and whether the work was on a "project-by-project basis." *Parrish*, 917 F.3d at 386-87 (citations omitted).   Here, Adels testified he has continuously worked as a DFS beginning in 1978 to the present.   (D.E. 179-2, Pages 5-7).   Adels further testified he worked for Defendant from 2000-2005 and, more recently, from October 2017 to June 2019.   (D.E. 179-2, Pages 5-7).[8]   During the most recent time Adels worked for Defendant, he worked exclusively for Defendant.   *Parrish*, 917 F.3d at 387 (The relevant concern is not whether plaintiffs could work for other companies but whether they actually did).   Additionally, the Fifth Circuit has found that a 10-month working relationship "begins to resemble an employment relationship" but no bright-line rule was created and instead "inferences gained from the length of time of the relationship depend on the surrounding circumstances."   *Parrish*, 917 F.3d at 387 (citation omitted).   The Fifth Circuit further found that given the "up-and-down nature of the oil business," it is clear workers in this industry would work continuously when they could but would not be paid during the down period and "there was no guarantee they would receive more work."   *Id*.   Further, "a valuable skillset [such as Adels 35 years-experience as a DFS] shows how the permanency of the relationship may, in reality, be not all that permanent" as widely-demanded skills can lead to more economic dependence.   *Id*. (citation omitted).   Lastly, when the work is on a "project-by-project

---

[8]Adels further testified he worked for Defendant's "predecessor" Imco from 1978-1995, asserting M-I was formed by Magabar and Imco merging in 1987.  (D.E. 179-2, Page 5).

basis," as it was here as evidenced by Adels' own testimony, "[t]his counsels heavily in favor of IC status." *Id*.; (D.E. 159-2, Pages 12-14 and 18-19; D.E. 159-6; and D.E. 170-2, Pages 5-7, 15 and 23).

Therefore, considering all of the factors discussed above, the undersigned recommends Defendant has offered sufficient summary judgment evidence to establish Adels was an independent contractor as a matter of law as he was, as a matter of economic reality, in business for himself.

## 2.    Other Exemptions

Alternatively, Defendant argues that even if Adels should have been classified as an employee, he is exempt from receiving overtime compensation under the administrative and/or highly compensated employee exemption. For the reasons stated below, the undersigned recommends Adels, if considered an employee, would be exempt under the highly compensated employee exemption.[9]

A highly compensated employee is exempt from the FLSA's overtime requirements if that employee receives a total annual compensation of at least $100,000,[10]

---

[9]The undersigned has not considered the administrative exemption in this case, given the recommendation that Adels was properly classified as an independent contractor and, alternatively, is exempt as a highly compensated employee.

[10]The parties dispute whether the current yearly amount earned must be $100,000 or $134,004. (D.E. 159, Page 27; D.E. 179, Page 25; and D.E. 188, Pages 8-9). However, it is clear that courts in the Fifth Circuit continue to apply the $100,000 threshold. *Hobbs v. Evo. Inc.*, 394 F. Supp. 3d 717, 745 (S.D. Tex. 2019) (applying $100,000 threshold); *Faludi v. U.S. Shell Solutions, LLC*, 936 F.3d 215, 219-20) (5th Cir. 2019) (same); *Dean v. Newsco Int'l Energy Serv., USA, Inc.*, No. 4:15-cv-03406, 2019 WL 3566726, at *12-13 (S.D. Tex. Aug. 6, 2019) (same); *see also* Wage and Hour Division Opinion Letter Fair Labor Standards Act (FLSA), 2019 WL 2914104, at *3 (Dep't of Labor July 1, 2019) ("The Department of Labor is undertaking rulemaking to revise the regulations in 29 C.F.R. part 541 that govern the FLSA's minimum wage and overtime

is compensated on a salary basis of not less than $455 per week and also performs office or non-manual work related to an employer's business or that of its customers.  29 C.F.R. § 541.601.  In a recent decision, the Fifth Circuit held that a day rate of at least $455.00 regularly received on a weekly or less frequent basis may satisfy the guaranteed salary requirement under an FLSA exemption.  *Faludi*, 936 F.3d at 219-20 (finding a $1,000 day rate and annual compensation of approximately $260,000 constituted being paid on a salary basis and exempted Plaintiff from receiving overtime as a highly compensated employee).  The Fifth Circuit specifically found Faludi was "compensated on a salary basis because his day rate guaranteed him $1,000 for every day that he worked, so he would receive more than the minimum of $455 per week for any week in which he performed work."  *Id*. at 219-20 (further finding the reasonable relationship test was irrelevant and did not apply to employees who meet the requirements of the highly compensated employee exemption).

Additionally, "[t]he monetary threshold is satisfied for a year in which the employee works less than the full year if he/she is paid a pro rata portion of the $100,000 based on the period of time he/she worked."  *Dean*, 2019 WL 3566726, at *12 (citation omitted).  Further, "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties."  *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 359 (5th Cir. 2015)

exemption for executive, administrative, and professional employees.  Until the Department issues its final rule, it will enforce the part 541 regulations in effect on November 30, 2016, including the $455 per week standard salary level and $100,000 annual compensation level for highly compensated employees.")

(citing 29 C.F.R. § 541.601(c)).   However, this exemption only applies to employees performing office or non-manual work and therefore, "for example…non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoreman, constructions workers, laborers and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt…no matter how highly paid they might be."   29 C.F.R. § 541.601(d).

Similar to *Faludi*, Adels was paid a predetermined day rate, never below $455.00, for each day he worked from October 2017 through June of 2019.  (D.E. 159-2, Pages 12-13 and 21-21 and D.E. 159-6).[11]  In November and December 2017, Adels was paid a day rate of $525.  (D.E. 159-6, Pages 1-4).  In each month of 2018, Adels received a day rate of either $550 or $650 (D.E. 159-6, Pages 5-26).  Adels made over $100,000 (or a pro rata portion of) for both 2017 and 2018, which would meet the first requirement for this exemption.  (D.E. 159-6 and D.E. 159-2, Page 21).  Further, Adels testified his primary duties were collecting mud, testing it, generating reports and independently making recommendations which the undersigned considers to be non-manual work.  (D.E. 159-2, Pages 18, 33-34, 36-39 and 42).  Therefore, the undersigned alternatively recommends Adels, if properly classified as an employee, would be exempt from receiving overtime compensation as a highly compensated employee.

---

[11]Adels was also paid a $25 per day per diem as well as mileage.  (D.E. 159-6).  However, the undersigned did not include these additional amounts when considering this exemption as Adels' salary is above the $100,000 threshold.

Therefore, for the reasons stated above, the undersigned recommends Defendant's Motion for Summary Judgment be **GRANTED** (D.E. 159) and Defendants Craig Adels be **DISMISSED** from this case.

## C.   Defendant's Motion for Partial Summary Judgment as to Willfulness and the Statute of Limitations (D.E. 161)

Defendant asserts that if Plaintiffs are found to be employees, rather than independent contractors, then Plaintiffs' claims should be limited to a two-year statute of limitations.   "FLSA claims are subject to a two-year statute of limitations for ordinary violations and a three-year period for willful violations." *Zannikos*, 605 F. App'x at 360 (citing 29 U.S.C. § 255(a)).[12]   Plaintiffs bear the burden of demonstrating willfulness.   *Id*. (citation omitted).   "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Id*.   (citations omitted); *Schreckenbach*, No. 4:11-cv-4065, 2013 WL 178126, at *11 (S.D. Tex. Jan. 16, 2013) (citations omitted).   "An employer who 'act[s] without a reasonable basis for believing that it was complying with the [FLSA] is merely negligent" as is an "employer who fails to seek legal advice regarding its payment practices." *Id*.   (citations omitted). To find willfulness, the evidence must demonstrate "an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention." *Zannikos*, 605 F. App'x at 360 (citation omitted); *Schreckenbach*, 2013 WL 178126, at *11 (citations omitted).   "An employer who makes a 'good-faith but incorrect assumption

---

[12]Claims under the FLSA must be brought "within two years after the cause of action accrued…except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."   29 U.S.C. § 225(a).

that a pay plan complied with the FLSA' does not commit a willful violation." *Schreckenbach*, 2013 WL 178126, at *11 (citing *McClaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)).

The undersigned recommends there is a genuine issue of material fact regarding whether Defendant knew it was violating the FLSA or recklessly disregarded a potential violation.  While it is Plaintiffs' burden to establish willfulness, Defendant has provided evidence to establish the absence of willfulness, specifically that it relied on the staffing agencies and their management services provider to comply with the FLSA and their contractual obligations when classifying the majority of Plaintiffs as exempt.  (D.E. 161-2).  It has further provided evidence that specific inquiries were made to several Plaintiffs relevant to whether they were exempt under the FLSA.  (D.E. 161, Pages 19-20 and D.E. 161-5, Pages 232-263).   Plaintiffs have presented evidence showing Defendants have previously litigated "closely related overtime issues" as early as 2012, also involving DFSs alleging they were misclassified as exempt employees and paid a day rate.  *Sealey v. EmCare, Inc.*, No. 2:11-cv-120, 2013 WL 164040, at *3-4 (S.D. Tex. Jan. 14, 2013); (D.E. 172, Pages 14-15). The complaint against M-I was filed in this case on October 9, 2018.  (D.E. 82).   While Defendant asserts the previous cases that were settled are inadmissible in their entirety as evidence, the fact these cases were filed is not necessarily inadmissible and further means "it is possible that Defendants had knowledge they were violating [the] FLSA at the time they classified" the Plaintiffs in this action.  *Villegas v. Dependable Const. Servs., Inc.*, No. 4:07-cv-2165, 2008 WL 5137321, at *27 (S.D. Tex. Dec. 8, 2008).   "Where employers have knowledge they are violating the FLSA but

choose to do so anyway, their violations are considered willful." *Sealy*, 2013 WL 164040, at *3.

Therefore, the undersigned recommends the evidence, when viewed in a light most favorable to Plaintiff, establishes there is a question of fact as to whether the Defendant willfully violated the FLSA and, accordingly, that Defendant's Motion for Partial Summary Judgment be **DENIED**.  (D.E. 161).

### D.    Defendant's Motion for Summary Judgment as to Adam Doherty, Johnathan Linder,[13] and Michael Grant Wojciechowicz (D.E. 164)

Defendant asserts Adam Doherty and Michael Grant Wojciechowicz have both, as part of *Syed et al v. M-I, LLC, et al*, No. 1:12-cv-01718-DAD-MJS, (E.D. Ca. Oct. 18, 2012), previously settled the same claims as alleged in this case for the same time period at issue.   (D.E. 164).   For the reasons stated below, the undersigned agrees and recommends these two Plaintiffs be dismissed from this action with prejudice.

*Syed* was filed on October 18, 2012 against Defendant as a collective action on behalf of all DFSs ("Mud Engineers") under the FLSA for failure to pay overtime and minimum wages and as a Rule 23 class action for various alleged violations of California state law.   *Syed*, No. 1:12-cv-01718-DAD-MJS, (E.D. Ca. Oct. 18, 2012) (Complaint); (D.E. 164-1 and D.E. 164-5, Page 2).   After the case was conditionally certified[14] and

---

[13]As stated previously in this M & R, the parties agree to the dismissal of Johnathan Linder as he failed to respond to discovery requests and/or failed to make himself available for a deposition. (D.E. 157; D.E. 173 and D.E. 182).   Therefore, the undersigned considers this motion only as to Adam Doherty and Michael Grant Wojciechowicz.

[14]On November 26, 2014, the court conditionally certified the FLSA class, in relevant part, as:

discovery had taken place, the parties participated in mediation and reached a settlement on or about September 9, 2016 which defined the FLSA collective class as the "115 individuals employed by Defendant in a Covered Position during the period from November 26, 2011 through November 30, 2016, who previously consented to join [the FLSA action]" and the "California Class" including all those in covered positions who performed work for Defendant both in California as well as outside California from October 18, 2008 through November 30, 2016.  (D.E. 164-5, Page 3).  Included in the settlement agreement was a release of "any and all [related] claims" against Defendant upon signing, cashing or depositing the settlement payment check.  (D.E. 164-5, Pages 18-19).  After the court granted the plaintiff's unopposed motion for preliminary approval of the settlement, notice of the settlement was sent to all class members in April 2017, including Doherty and Wojciechowicz who did not opt-out of, or object to, the settlement.  (D.E. 164-7 and D.E. 187-1).  Doherty's last week of employment with Defendant was February 19, 2016 and Wojciechowicz's last week of employment with Defendant was July 17, 2017.  (D.E. 164-9, Pages 11 and 13).  On July 26, 2017, the district court granted final approval of the settlement.  (D.E. 164-8).  A settlement payment check was issued to Wojciechowicz showing paid on August 16, 2017 and the same to Doherty showing paid on August 22, 2017.  (D.E. 187-1, Page 3).

---

All persons who were or are employed by Defendant, on or after August 5, 2010 (the "FLSA Class Period"), in the job position known as drilling fluids specialist ("DFS"), "mud engineer," "mud man," "mud man trainee," or "consultant mud man," or equivalent titles (the "FLSA Collective Plaintiffs.") (D.E. 164-5, Page 2).

Considering the above evidence, the undersigned recommends both Doherty and Wojciechowicz are barred from participating in this case under the doctrine of *res judicata*.

## VI.   CONCLUSION

For the reasons stated above, the undersigned recommends Defendant's Motion to Dismiss (D.E. 157) and Motions for Summary Judgment (D.E. 158, D.E. 159 and D.E. 164) be **GRANTED** and Defendant's Motion for Partial Summary Judgment be **DENIED**. (D.E. 161).

**The parties are instructed that their objections to this M & R shall be filed in one document limited to 15 pages in length.   Parties who do not comply with this instruction shall have their objections struck.**

ORDERED this 31st day of December, 2019.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).